UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Shelly Jordan,

    Plaintiff,

v.

Chicago Transit Authority,

    Defendant.

No. 10 C 3791
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Shelly Jordan brought this action against Defendant Chicago Transit Authority (the "CTA") alleging that he was terminated based on race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981), and 42 U.S.C. § 1983 ("Section 1983"). The case is presently before the court on Defendants' motion for summary judgment.

### FACTS AS ALLLEGED

Shelly Jordan began working for the CTA as a track maintenance worker, or "trackman," on March 22, 1999. The CTA operates a public transportation system that covers the City of Chicago and 35 of its surrounding suburbs. As a trackman, Jordan performed various duties in the maintenance, inspection, repair, construction, signaling, and flagging activities associated with track construction and maintenance work. Jordan is African-American.

*Area 605*

A central component to this case is the CTA's administrative holding program, "Area 605." When CTA employees miss work for medical reasons, they spend up to 26 weeks on short-term disability before the CTA places them in Area 605. To leave Area 605 and return to work,

CTA employees must complete a three-step procedure. First, the employee must be found fit to return to work by CTA's medical staff. Next, the employee must provide documentation from the physicians who treated them for the medical conditions that led to the employee's placement into Area 605 verifying that the conditions have been resolved. Third, the CTA must determine that the employee's former worksite has an available and budgeted position for the employee.

After two years in Area 605, the employee must either (1) file for a one-year extension, (2) return to active work status, (3) apply for an Occupational Injury Disability Pension, (4) Apply for a Non-Occupational Disability Pension, (5) or retire; otherwise, the employee will be administratively separated.

*Jordan Enters Area 605*

While at work in December 2003, Jordan fell on the tracks and injured his back. After 26 weeks of short-term disability, the CTA placed Jordan into Area 605 because of mental and physical issues. In Area 605, Jordan was monitored by Mike Montagna, who works as an Occupational Adjustment Specialist in CTA's Human Resources Department. Montagna reports to Larry Wall, who worked as CTA's General Manager of Benefit Services from 2001 to 2011.

After his accident, Jordan received medical care from a primary care physician he had been seeing since the 1990s, Dr. Leonard Robinson, as well as a psychologist that he began seeing in 2004, Dr. Joyce MacLaren. After being in Area 605 for two years, Jordan requested and received a one-year extension.

*Montagna's First Offensive Remarks*

When Jordan called Montagna to discuss his return to work on December 13, 2006, Montagna said "why do you want to know this for, I heard you moved to Las Vegas and you only want to know your last date to return by so you can wait until the last minute to return to

work." After Jordan told Montagna that it was none of his business, Montagna informed Jordan that he would get back to him about what documentation he needed to provide. Before the conversation ended, Jordan heard Montagna say "you people." Although Jordan called Montagna the next day and left a voicemail, Jordan never heard back from Montagna. When Jordan told Wall about Montagna's comment, Wall advised Jordan to write a letter to the CTA describing the circumstances of his telephone conversation with Montagna. Jordan wrote this letter on January 8, 2007.

*Jordan Requests to Leave Area 605*

On January 29, 2007, Jordan appeared at CTA headquarters to discuss his return to work with Montagna and Wall. Prior to their meeting, CTA medical staff gave Jordan an eye exam, a drug test, and a physical examination. These tests all found that Jordan was fit for work. After Jordan gave Montagna his medical documentation as well as a note from Dr. Robinson that said he was fit to return to work without restrictions, Montagna said "you black people," called Jordan a "nigger," and then walked out of the office. Montagna denies ever using these terms.

At this point, Montagna left his office to discuss Jordan's return-to-work note with Wall. Montagna felt that Jordan's note was insufficient because Jordan failed to provide any medical documentation discussing his mental health. Wall confirmed that Jordan needed to provide additional psychological records as a condition for his return to work. When Wall delivered this message to Jordan, he also told Jordan that he should no longer deal with Montagna but should contact Wall directly. Although the CTA claims that Wall gave Jordan until February 3, 2007 to hand over these additional medical records, Jordan claims that Wall only told him to make his medical documents with Dr. MacLaren available by releasing them.

Later that day, Jordan visited Dr. MacLaren's office and signed written medical release

3

forms so that the documents could be released. After signing the release, Jordan left Wall a voicemail informing him that he had signed the forms and his medical documentation could now be released with a call from the CTA. Wall did not return Jordan's call. Jordan called Wall again the next day and left an identical voicemail message, but the CTA claims that neither Wall nor Montagna were ever contacted by Jordan after their meeting.

*CTA Terminates Jordan*

On February 8, 2007, the CTA administratively separated Jordan. According to the CTA, Jordan was terminated for failing to provide sufficient medical documentation that was required for him to return to work following a three-year medical absence. The CTA also claims that Wall made the decision to administratively separate Jordan and that no CTA employee recommended or suggested this decision to Wall. Jordan has alleged two other CTA trackmen, Donald McNichols and Mark Cantone, were treated more favorably than himself. However, neither McNichols nor Cantone were ever placed in Area 605.

**LEGAL STANDARD**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts

4

showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## DISCUSSION

### I. Title VII Race Discrimination Claim

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). As the Supreme Court has explained, "the obligation imposed by Title VII is to provide an equal opportunity for each applicant regardless of race." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005) (citing *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579 (1978)). A plaintiff bringing a title VII race discrimination claim seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir.

5

2012); *Johnson v. Gen. Bd. Of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 727–28 (7th Cir. 2013); *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003).

A.  **Direct Method of Proof**

Jordan argues that he can proceed under the direct method of proof on his Title VII discrimination claim. Under the direct method, a plaintiff must offer direct or circumstantial evidence that "points directly" to a discriminatory reason for the employer's action. *Atanus*, 520 F.3d 662, 671–72 (7th Cir. 2008) (quoting *Burks v. Wisconsin Dep't of Trans.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006)). Direct evidence proves a particular fact without the reliance upon inference or presumption. *Rudin,* 420 F.3d at 720 (direct evidence is an admission by the decisionmaker). Direct evidence is rare. *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). Direct evidence "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Id.* (citing *Troupe v. May Dep't Stores*, 20 F.3d 734, 736 (7th Cir. 1994)).

Circumstantial evidence, on the other hand, is much more common and allows the trier of fact "to infer intentional discrimination by the decisionmaker." *Id.* (citing *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). In order for the plaintiff's collection of circumstantial evidence to be convincing, it must "directly point to a discriminatory reason for the employer's action and also be directly related to the employment decision." *Whitfield v. International Truck and Engine Corp.*, 755 F.3d 438, 443 (7th Cir. 2014). There are three distinguishable types of circumstantial evidence of intentional discrimination: (1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically

receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Darchak v. City of Chicago Bd. of Ed.*, 580 F.3d 622, 630 (7th Cir. 2009); *Rudin*, 420 F.3d at 721 (citing *Troupe*, 20 F.3d at 736). To establish unlawful discrimination and defeat summary judgment, the circumstantial evidence must create a "convincing mosaic of discrimination." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009).

Drawing all inferences in favor of Jordan, material issues of fact preclude summary judgment. Although the most important issues of material fact in this case concern Montagna's alleged comments, there is a quantity of suspicious activity supporting Jordan's racial discrimination claim. For example, Wall continued letting Montagna interact with Jordan and supervise his job placement application even after Jordan reported Montagna's first episode of verbal attacks ("you people") and wrote a letter to the CTA. Although Wall eventually gave Jordan the message, it is also arguably disturbing that Wall did not tell Jordan to break contact with Montagna immediately. Instead, Wall waited until after Montagna, it is said, released another outburst of racial epithets ("you black people" and "nigger"). Even if Wall was the ultimate decisionmaker here, as the CTA alleges, Montagna's alleged comments are still relevant because he had so much influence over Jordan's application. *See Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452–53 (7th Cir. 2009).

After everything that had transpired, the CTA's failure to return any of Jordan's voicemails is alarming. If the CTA was actually attempting to place Jordan in a new position, it seems likely that the CTA would have followed up at least once. Taken together, therefore, Jordan's evidence surpasses mere speculation. *See Hutt v. AbbVie Products,* LLC, 2014 WL 3033126, at *4 (7th Cir. July 7, 2014) ("[S]peculation about discrimination will not survive

summary judgment."). Because Jordan has sufficiently presented a "convincing mosaic" of circumstantial evidence from which a factfinder could make a reasonable inference of race discrimination, summary judgment is denied and Jordan may proceed under the direct method of proof.

**B.      Indirect Method of Proof**

Unlike his efforts above, Jordan has failed to establish a *prima facie* case of discrimination according to the indirect, burden-shifting method of proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014). To establish a *prima facie* case of discrimination under the indirect method, Plaintiff must show that: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591–92 (7th Cir. 2008); *Brewer v. Board of Trustees of the University of Illinois*, 479 F.3d 908, 915 (7th Cir. 2007). After a plaintiff makes a *prima facie* case, a presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its action. *Johnson*, 733 F.3d at 727–28. If the employer does articulate such a reason, the burden then shifts back to the plaintiff to show that the employer's proffered reason is pretext, which then permits an inference that the employer's real reason was unlawful. *Id.*; *Nichols v. Southern Illinois Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007).

Jordan has failed to establish a *prima facie* case under the indirect method because he has failed to establish the similarly situated requirement. Under Title VII, a plaintiff is not similarly situated to another employee unless he can show that they are comparable in "all material

8

respects, which is a common-sense, flexible analysis of relevant factors." *Cung Hnin*, 751 F.3d at 504 (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014)); *Caskey*, 535 F.3d at 591-92. These relevant factors include whether the employees had the same supervisor, had comparable experience and qualifications, were subject to the same employment standards, and engaged in similar conduct." *Cung Hnin*, 751 F.3d at 504 (citing *Majors v. General Elec. Co.*, 714 F.3d 527, 538 (7th Cir. 2013)); *Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009); *Brummett v. Sinclair Broadcast Group, Inc.,* 414 F.3d 686, 692 (7th Cir. 2005); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000). The similarly situated requirement attempts "to eliminate confounding variables, such as differing roles, performance histories, or decision–making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Cung Hnin*, 751 F.3d at 505 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

Jordan alleges that two CTA employees—Donald McNichols and Mark Cantone—were treated more favorably than himself, but fails to show that these two employees were comparable in all material respects. There is no evidence that these two other CTA trackmen had psychological conditions similar to Jordan, returned to work without first providing psychological records, or even entered Area 605 in the first place. Although employees need not be "identical in every conceivable way," the fact that McNichols and Cantone were never subjected to the placement standards of Area 605 is material. Thus, Jordan has failed to establish the similarly–situated requirement and this failure is fatal to his ability to proceed under the indirect method. *See Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013); *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004). Accordingly, Jordan may proceed with his Title VII claim, but only under the direct method.

**II.     Race Discrimination Claims Under Sections 1981 and 1983**

Jordan's claims under Sections 1981 and 1983 both fail. Jordan's Section 1981 fails because Section 1983 is the sole avenue of relief for a violation of the rights protected by Section 1981 when the claim is asserted against a state (i.e., government) actor. *See Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014). Section 1981 does not create a private right of action against state actors. *Id*. Jordan's Section 1983 claim fails because it is time-barred. Claims under Section 1983 are governed by the forum state's statute of limitations for personal injuries, which is two years in Illinois. *Id.* at 667–68; *see also Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cnty., Ill.*, 46 F.3d 682, 684 (7th Cir. 1995) (citing *Kalimara v. Illinois Department of Corrections,* 879 F.2d 276 (7th Cir. 1989)).

Jordan's Section 1983 claim would fail even if it wasn't time–barred. To bring a Section 1983 claim against a state actor, government entity, or municipality such as the CTA, a plaintiff must establish municipal liability as articulated in *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694 (1978). *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *see also Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 731–34, (1989) (holding as a matter of statutory interpretation that Section 1983 is the exclusive remedy in damages suits against state employees for Section 1981 violations and that *Monell* applies); *Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142, 1148 (7th Cir. 1999) (finding "[r]ecovery under § 1981 . . . problematic" where "although the accused perpetrators of discrimination are teachers and administrators at the schools where [the plaintiff] worked, the only defendant is the School Board, an agency of municipal government—and recovery against a governmental body under § 1981 may not be based on *respondeat superior* "); *Everson v. City of Madison,* 672 F.Supp.2d 881, 882 (W.D. Wis. 2009) ("Under Title VII, an employer may be held liable using traditional

10

agency principles, but under § 1983 the plaintiff must show that the employer's own unconstitutional actions caused the plaintiff's harm.") (citing *Phelan v. Cook County,* 463 F.3d 773, 788–89 (7th Cir. 2006)).

When a plaintiff brings a *Monell* claim, a municipal entity like the CTA is only responsible for "[its] own illegal acts." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). To prevail on a Section 1983 claim against a municipality, therefore, a plaintiff must demonstrate that the municipality acted pursuant to a municipal policy or custom. *Id.*; *Monell*, 436 U.S. at 692. A plaintiff may establish an official policy or custom by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) the act of a person with final policy-making authority. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007); *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734–35 (7th Cir. 1994).

Here, Jordan cannot establish that the CTA had a policy of racially discriminating or that what happened to him was a widespread practice, because it is well-established that an unconstitutional policy or custom cannot be inferred from a single deprivation alone. *Hossman v. Blunk*, 784 F.2d 793, 796-97 (7th Cir. 1986) (stating that "[a]lleging one specific incident in which the plaintiff suffered a deprivation and generally alleging a custom or policy will not be adequate"); *Gustafson v. Jones*, 117 F.3d 1015, 1022 (7th Cir. 1997); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 399 (1997) (finding that a single hiring decision was not enough to show that the County itself had a policy or custom that caused the plaintiff's injuries).

Similarly, Jordan cannot establish that the CTA's act was done by a person with final policymaking authority. The record is devoid of any evidence that the CTA Board was involved in the decision to administratively separate Jordan. Nor is there evidence that Wall or Montagna had authority to establish official municipal policy concerning the removal of a CTA employee from Area 605. *See Radic v. CTA*, 73 F.3d 159, 160–61 (7th Cir. 1996) (finding that the plaintiff "needed to show that the Board somehow acted to confer policymaking authority on a particular official before his or her actions could be considered policy decisions); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability"). Jordan's theory for Section 1983 liability—that Montagna is the final decisionmaker and therefore a policymaker—is flawed because it equates the authority to establish an administratively final decision to the authority to establish official municipal policy. Only the latter suffices for Section 1983 liability under *Monell*. *See* Radic, 73 F.3d at 161.

## IV. CONCLUSION

For the foregoing reasons, I grant Defendants' motion for summary judgment in part and deny it in part. Jordan's race discrimination claims under Section 1981 and Section 1983 are dismissed with prejudice. Jordan may proceed with his Title VII race discrimination claim under the direct method only.

ENTER:

James B. Zagel
United States District Judge

DATE: December 9, 2014